# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMIL JUTROWSKI,<br><br>    *Plaintiff,*<br><br>v.<br><br>TOWNSHIP OF RIVERDALE, *et al*,<br><br>    *Defendants.* | Civil Action No. 13-7351<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on the motions for summary judgment filed by the Township of Riverdale, Riverdale Police Officer Travis Roemmele, Riverdale Sergeant Christopher Biro, and Police Chief Thomas Soules (collectively, the "Riverdale Defendants"), D.E. 59, and the State of New Jersey, New Jersey State Trooper Jeffrey Heimbach, New Jersey State Trooper James Franchino, and Colonel Rick Fuentes (collectively, the "State Defendants"), D.E. 60. Plaintiff Emil Jutrowski filed a brief in opposition to both motions (D.E. 68) to which the State Defendants and the Riverdale Defendants filed briefs in reply. D.E. 74, 77. The Riverdale Defendants also filed a brief in opposition to the State Defendants' motion, and the State Defendants filed a separate reply in response to the Riverdale Defendants' opposition. D.E. 69, 76. The Court reviewed all submissions made in support of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motions are **GRANTED**.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

After eating a meal and drinking "several alcoholic beverages" during the late afternoon of June 23, 2010, Plaintiff got in his car to drive home. Plaintiff's Counterstatement of Undisputed Material Facts ("PCMF") ¶¶ 1-3. While driving, Plaintiff hit the rear bumper of another vehicle near the Riverdale Exit on Route 287 North; his vehicle swerved and ultimately came to rest against a guardrail on the left shoulder of the highway. State Defendant's Statement of Material Facts Not in Dispute ("SDSMF") ¶¶ 15-18. Plaintiff sustained a sustained a small laceration to his left eye from the accident. PCMF ¶ 8. Moreover, Plaintiff was legally intoxicated while operating his vehicle and in the aftermath of his accident.[1] PCMF ¶ 4; SDSMF ¶ 13.

Defendant Travis Roemmele, an officer with the Riverdale Police Department, was the first Defendant to arrive at the scene of the accident. PCMF ¶ 11. Roemmele parked his patrol car on the right shoulder of Route 287, near the other vehicle involved in the accident was stopped. Declaration of Robert P. Preuss ("Preuss Decl.") Ex. G. Defendant Christopher Biro, a Sergeant with the Riverdale Police Department, arrived shortly after, stopping his patrol car immediately behind Plaintiff's car on the left shoulder. *Id.*; PCMF ¶ 13. Biro's emergency lights remained activated after he pulled over and exited the car. Preuss Decl. Ex. G. Defendant Jeffrey Heimbach, a New Jersey State Trooper, arrived next. Heimbach stopped his car behind Biro's car. SDSMF ¶ 20; PCMF ¶ 17. Defendant State Trooper James Franchino was the last Defendant to arrive at the scene. PCMF ¶ 35.

---

[1] The Defendants who were present at the accident scene will be referred to collectively as the Individual Officer Defendants.

2

At the time, Riverdale police cars had dashboard cameras that could record events occurring at the front of the vehicle. PCMF ¶ 18. The Riverdale Defendants, however, did not produce any dashboard camera recordings of the incident. *Id.* ¶ 24. Biro testified that the camera automatically recorded when the vehicle's emergency lights were activated. *Id.* ¶ 19. The video would also start recording if an officer pressed the "record" button in vehicle. Biro testified that Riverdale law enforcement personnel were required to record all vehicle stops. *Id.* ¶¶ 20-21. Biro did not press the record button because he thought that he was responding to a motor vehicle accident, not a traffic stop. *Id.* ¶ 22. State Trooper vehicles were also capable of recording events that occurred at the front of the vehicle through a dashboard camera; the State Defendants produced relevant dashboard camera videos in discovery and included the recording from Heimbach's dashboard camera as an exhibit to their motion for summary judgment. *See* Preuss Decl. Ex. G. The dashboard camera recording from Heimbach's Trooper vehicle did not capture any of the critical alleged events. *Id.*

Plaintiff remained in his vehicle as the Individual Defendants began to arrive at the accident scene. SDSMF ¶ 19. A Riverdale Defendant spoke to Plaintiff first through the window of Plaintiff's car, and "[a]t some point [Heimbach] approached [Plaintiff's] passenger-side window and began speaking to him in a loud voice." *Id.* ¶ 21; Riverdale Defendants' Statement of Undisputed Material Facts ("RDSMF") ¶ 11. When Plaintiff rolled down the window, Heimbach "detected an overwhelming odor of an alcoholic beverage emanating" from Plaintiff's car. SDSMF ¶¶ 22-23; *see also* PCMF ¶ 27. After Heimbach spoke with Plaintiff, emergency medical technicians ("EMTs") entered the car, took Plaintiff's vitals and cleaned the cut on his head. Plaintiff refused further medical care and requested to go to Valley Hospital due to a preexisting heart condition. SDSMF ¶¶ 28, 34; PCMF ¶¶ 28-29. After the EMTs left Plaintiff's car, Heimbach

asked Plaintiff to exit his vehicle. Plaintiff refused to exit the car, and after a couple of minutes of continued refusals, Heimbach told him "either you go with EMS, or we are going to forcibly remove you from the vehicle." SDSMF ¶¶ 35-36; PCMF ¶ 30. It appears that Plaintiff exited his vehicle after receiving this ultimatum.

Because Plaintiff's car was pinned against the left guardrail he had to climb across the front seat of his car and exit through the passenger side door. Plaintiff "exited his vehicle in a manner that appeared to be sloppy to [] Franchino." SDSMF ¶¶ 38-39. Once out of the car, Plaintiff stated "What do you want me to do? Recite the alphabet backwards, A, B, C, 1, 2, 3." *Id.* ¶ 42. In addition, Heimbach and Franchino observed that Plaintiff was "stumbling and staggering," "was unable to walk," and "was grasping for support." *Id.* ¶ 40; PCMF ¶ 32.

Plaintiff began walking towards the ambulance, which was also stopped on the left shoulder of Route 287. PCMF ¶ 40. Franchino, who was walking behind Plaintiff, grabbed Plaintiff's right arm and wrist with both hands as Plaintiff was in a "potentially dangerous situation" because cars were driving by in the left lane and Plaintiff was staggering.[2] Declaration of Oleg Nekritin ("Nekritin Decl.") Ex. N, T41:8-10; 44:6-25. In response, Plaintiff "flung" Franchino's arm back and hit Franchino's hat and forehead with the back of his hand. *Id.* 45:1-17. Franchino then used a "leg sweep" take-down maneuver he learned at the police academy to bring Plaintiff to the ground. *Id.* 46:19-47:18. Franchino testified that he used the take-down maneuver because Plaintiff was belligerent and he was worried that Plaintiff "was going to start a fight and we were all going to wind up in the left lane." *Id.* 50:12-51:8.

---

[2] Heimbach and non-party State Trooper Branco were also walking behind Plaintiff on the left shoulder of the highway. PCMF ¶ 43.

4

Plaintiff fell forward, and Franchino fell on top on him. SDSMF ¶¶ 69-70. The Trooper Defendants then tried to place Plaintiff in handcuffs. After falling to the ground, Plaintiff placed his hands under his body and the Troopers had to struggle with Plaintiff to secure his arms. *Id.* ¶¶ 72-74. At the time, Plaintiff weighed approximately 300 pounds. *Id.* ¶ 60. Franchino was positioned near Plaintiff's right shoulder, Heimbach was on Plaintiff's right side and non-party State Trooper Branco was on Plaintiff's left side. PCMF ¶ 47. During this struggle, Franchino used his baton "as a prying tool in order to pull [Plaintiff's] arms from underneath him." SDSMF ¶ 76-77. After Plaintiff was already on the ground, Biro ran from his police car, which was stopped behind Plaintiff's vehicle, and placed himself on Plaintiff's feet. PCMF ¶ 48. Roemmele crossed Route 287 and stood somewhere near Plaintiff and the Individual Defendant Officers. RDSMF ¶ 14. Roemmele did not help restrain Plaintiff. *Id.* ¶ 22.

Plaintiff alleges that after he was taken to the ground an Individual Defendant kicked him in the face one or two times, causing substantial injuries. PCMF ¶¶ 50-51. None of the Individual Defendants saw Plaintiff getting kicked. SDSMF ¶¶ 86-87; Preuss Decl. Ex. K. Critically, Plaintiff did not see the individual's face and cannot identify which Defendant kicked him. RDSMF ¶ 17. During an interview for a State Police Internal Affairs Investigation, Plaintiff stated that he was kicked in the face by someone wearing pants that were tucked into his boots, and that he could "definitively tell . . . that because of the boots," he was not kicked by a State Trooper. SDSMF ¶¶ 80-81. During his deposition, however, Plaintiff maintained that he does not know what type of footwear made contact with his face or whether a Trooper or Riverdale Police Officer kicked him. RDSMF ¶ 19. Plaintiff's medical expert concluded that the type of injury Plaintiff sustained would probably not be caused by a face-first fall to the ground. He instead concluded that it would take a "tremendous amount of force laterally to create such an injury" and that the

5

injury "would take either a kick or punch of significant force." Nekritin Decl. Ex. B, at 5. He further stated that "[i]t is more likely that [Plaintiff's] injuries were the result of [Plaintiff] being kicked to his face rather than falling." *Id.* Defendants do not contest the conclusion of Plaintiff's medical expert.

Plaintiff was eventually handcuffed, brought to his feet, and taken to a hospital by ambulance. SDSMF ¶¶ 90-91.

### B. Procedural History

Plaintiff filed the instant Complaint in New Jersey state court, and Defendants removed the matter to this Court.[3] D.E. 1. Plaintiff asserts claims for excessive force pursuant to 28 U.S.C. § 1983 (Count One); failure to train, supervise, and control officers pursuant to Section 1983 and the New Jersey Tort Claims Act ("NJTCA") as to Riverdale Township and its Chief of Police Thomas Soules in his official capacity, and the State of New Jersey and the Commanding Officer of the New Jersey State Troopers Colonel Fuentes in his official capacity (Counts Two and Four); state law tort claims for assault and battery as to all Defendants (Counts Three and Seven); and civil conspiracy under state and federal law (Counts Five and Six). The Defendants filed a motion to dismiss arguing that Plaintiff's claims were time-barred under the applicable statute of limitations but the motion was denied. D.E. 4, 10, 15, 19. And after conducting discovery, Defendants filed the current motions for summary judgment.

### II. SUMMARY JUDGMENT STANDARD

---

[3] The instant case is the second iteration of this litigation. On June 3, 2012, nearly two years after the incident, Plaintiff filed suit, using a substantially similar complaint against Defendants in the District of New Jersey. *See* Civil Action No. 12-3318. That matter was dismissed without prejudice for lack of subject matter jurisdiction and failure to state a claim. No 12-3318, D.E. 37. Plaintiff filed a motion requesting that the Court voluntarily dismiss the matter so he could refile his complaint in New Jersey state court. The complaint was dismissed, per Plaintiff's request, on September 30, 2013. *Id.* D.E. 39, 43.

6

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the

court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

#### A. Section 1983 Excessive Force (Count One)

Plaintiff argues that the kick to his face after he was already on the ground constitutes excessive force. Plf. Br. at 7.[4] "A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002). The reasonableness inquiry is objective. Moreover, a court must consider whether a seizure was reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). As a result, a court must consider whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Norcross v. Town of Hammonton*, No. 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) (quoting *Graham*, 490 U.S. at 397). Finally, to establish liability under Section

---

[4] The Riverdale Defendants' brief in support of their motion for summary judgment (D.E. 59-1) will be referred to as "Riverdale Br." The State Defendants' brief in support of their motion for summary judgment (D.E. 60-1) will be referred to as "State Br." Plaintiff's brief in opposition to Defendants' motions for summary judgment will be referred to as "Plf. Br.," D.E. 68-5, 68-6.

8

1983, a defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

At this stage of the litigation, the focus of Plaintiff's excessive force claim is *who* kicked him, not whether he was kicked. Plaintiff asserts that he presents enough evidence to demonstrate that he was kicked. Plf. Br. at 7, 9. Because Defendants do not contest that Plaintiff was kicked, the Court will assume that an Individual Officer kicked Plaintiff in the face after he was brought to the ground. Plaintiff, however, cannot identify which Defendant kicked him. Plaintiff argues that based on the evidence, a jury "may infer . . . that it was a State [Police] Defendant that kicked the Plaintiff." *Id.* at 9. But Plaintiff also argues that either of the individual Riverdale Officers could have also kicked him. *Id.* at 10. Thus, Plaintiff asks the Court to guess which Individual Officer Defendant committed the alleged wrong. Defendants also point fingers and place blame on each other. The Riverdale Defendants argue that it was physically impossible for either Riverdale Defendant on the scene to kick Plaintiff. *See* Riverdale Br. at 6-7. The State Defendants contend that a Trooper did not kick Plaintiff because Plaintiff previously testified in an Internal Affairs hearing that a Riverdale Officer kicked him. *See* State Br. at 15-16.

"Where the plaintiff fails to identify which defendant officer is responsible for the alleged excessive force, there is no evidentiary basis on which to hold any of the defendants liable." *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 395 (E.D. Pa. 2010).[5] For example, in *Sharrar v.*

---

[5] When a plaintiff pleads both excessive force and failure to intervene claims, courts have determined that the plaintiff need not establish each officer's role in the alleged incident. *See, e.g., Corley v. Shahid*, 89 F. Supp. 3d 518, 524 (E.D.N.Y. 2015) ("I do not hold that plaintiff had an obligation to identify which police officer kicked him and which police officers failed to intervene. It would be too much to require a citizen subjected to a police attack to separately identify the role of each defendant."); *Karkoszka v. Dart*, No. 13-1635, 2016 WL 164331, at *3 (N.D. Ill. Jan. 14, 2016) ("A plaintiff's inability to identify which of the named defendants attacked him does not preclude liability on an excessive force claim as long as the plaintiff 'can show at trial that an officer attacked him while other officers ignored a realistic opportunity to intervene.'" (quoting

*Felsing*, the plaintiff could recognize all of the defendant officers but could not identify which officers were in the police car with him when the alleged misconduct occurred. 128 F.3d 810, 821 (3d Cir. 1997). The Third Circuit affirmed the district court's decision to grant summary judgment to defendants because "[t]here was . . . no evidentiary basis on which to hold these defendants liable." *Id.* at 821. Similarly, in *Howell v. Cataldi*, the Third Circuit concluded that the district court did not err when it directed a verdict in favor of the defendant police officers because Plaintiff could not identify which of the two officers who were present actually beat him with a wooden club. 464 F.2d 272, 282-83 (3d Cir. 1972); *see also McNeil*, 694 F. Supp. 2d at 399 ("I am constrained to grant defendants' motion for summary judgment because plaintiff has not provided any evidence as to *which* officer kicked him in the head.").

The Court here is similarly constrained. Under the present facts, the Court is unable to conclude that kicking Plaintiff in the face while he was already on the ground was objectively reasonable. In fact, based on the evidence available, the opposite appears true. But Plaintiff fails to provide evidence that identifies which Individual Officer Defendant, or even if a State or Riverdale Defendant, committed the alleged misconduct. Due to this lack of evidence, there unfortunately can be no Section 1983 liability (assuming that the kick in fact occurred).

---

*Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000))). Plaintiff here does not assert failure to intervene claims and, more importantly, the facts do not suggest that any of the Individual Defendants had any opportunity to prevent the unidentified officer from kicking Plaintiff. For example, the alleged facts do not suggest that an officer announced that he was about to kick Plaintiff or that other officers had an adequate opportunity to prevent the kick from occurring. Moreover, Plaintiff does not allege that he was subject to repeated kicks, in which case another officer may have been in position to stop the assailant after the first kick (or soon thereafter). *See Ewing v. Cumberland County*, 152 F. Supp. 3d 269, 309 (D.N.J. 2015) (stating that an officer is only liable under Section 1983 for failure to intervene "if he saw the beating and there was a realistic and reasonable opportunity to intervene.") (internal quotation omitted).

Plaintiff argues that summary judgment should be denied because the Riverdale Defendants failed to produce a dashboard camera video recording of the incident from Biro's police vehicle. Plaintiff asks the Court to draw an adverse inference that the Riverdale Defendants destroyed or concealed the recording because it showed the actual individual who kicked Plaintiff. Plf. Br. at 10-11. Plaintiff contends that cameras in Riverdale Police cars automatically record when the emergency lights are activated and that the emergency lights on Biro's patrol car were activated. PCMF ¶¶ 19, 23. Plaintiff, therefore, assumes there was a recording of the incident but that it was destroyed.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve properly for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)). Courts have "the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and [their] inherent authority." *Id.* Courts frequently use an adverse inference instruction as a spoliation sanction. This instruction "permits a jury to infer that destroyed evidence might or would have been unfavorable to the position of the offending party." *Id.* (quoting *Scott v. IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J. 2000)).

Although a spoliation inference may be an appropriate sanction if the Riverdale Defendants actually destroyed the recording, Plaintiff's argument fails on a more fundamental level -- Plaintiff fails to provide sufficient evidence demonstrating that the video actually existed. Plaintiff needed to do more here to establish spoliation. In essence, Plaintiff's entire argument rests on the fact that the dashboard cameras in the Riverdale patrol vehicles normally record when the emergency lights are activated. However, Plaintiff did not perform any necessary follow-up. For example, Plaintiff

11

could have made a request for inspection pursuant to Federal Rule of Civil Procedure 34(a) to determine whether the recording device in Biro's patrol car was in working order the day of the incident, or he could have conducted further discovery to confirm Biro's statements as to when and how dashboard cameras recorded. Of course, Plaintiff could have also enlisted the services of a technical expert to aid in his review. Plaintiff failed to take any of these steps. If Plaintiff had actually inspected the vehicle in question, then he would be in much better position to support his claim (or perhaps he would have learned that his claim was not supported). In short, Plaintiff had a good faith basis to receive additional discovery as to the vehicle, but this was a starting, rather than an ending, point. As a result, the Court will not draw an adverse inference based on the limited record regarding spoliation that Plaintiff presents.

In sum, due to a lack of evidence as to which Individual Defendant kicked Plaintiff, summary judgment is granted to Defendants for the excessive force claims.

### B. Assault and Battery Tort Claims (Counts Three and Seven)

Plaintiff asserts claims, pursuant to the NJTCA, against the State and the City of Riverdale based on the tortious conduct of its employees. Compl. ¶¶ 42-48. The NJTCA provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. "Thus, there can be no vicarious liability by a public entity for intentional torts committed by its employees." *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007). Assault and battery are intentional torts. *See Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012). Consequently, Plaintiff's vicarious liability claims as to the State and City of Riverdale cannot stand. Accordingly, summary judgment is granted as to Count Three.

Plaintiff also brings tort claims against the Individual Officer Defendants for assault and battery. Compl. ¶¶ 66-68. Much like his Section 1983 claim, Plaintiff argues that the "the identity of the culprit is a material issue of fact that needs to be decided on by a fact finder." Plf. Br. at 16. Pursuant to the NJTCA, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a). "Thus, a plaintiff may sue a public employee for common-law assault and battery." *Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 WL 3651352, at *8 (D.N.J. Aug. 18, 2011). But in this instance, the lack of evidence as to which Individual Defendant kicked Plaintiff is also fatal for Plaintiff's tort claims. Plaintiff argues that it is for a jury to decide, but Plaintiff would essentially be asking the jury to guess as to whom is responsible. For the same reasons as Plaintiff's Section 1983 excessive force claim, summary judgment is granted as to Count Seven.

### C. Failure to Train (Counts Two and Four)

In Counts Two and Four, Plaintiff alleges that Fuentes and the State of New Jersey, and Soules and the Township of Riverdale, failed to properly train, supervise and control the Individual Defendant Officers.[6] Compl. ¶¶ 35-41, 49-55.

#### 1. Section 1983 Failure to Train, Supervise and Control

##### a. Claims against the State Defendants

For Section 1983 claims, "[a] suit against a supervisor in his official capacity is essentially a suit against the governmental entity that employs him." *Cincerella v. Egg Harbor Twp. Police Dep't*, No. 06-1183, 2009 WL 792489, at *12 (D.N.J. Mar. 23, 2009). This type of municipal liability claim is generally referred to as a *Monell* claim, based on *Monell v. Department of Social*

---

[6] Plaintiff asserts claims against Fuentes and Soles in their "representative capacity," which the Court construes as claims against these Defendants in their official capacities only.

*Services*, 436 U.S. 658, 690-91 (1978). To establish a Section 1983 municipal liability claim, a plaintiff "must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690-91). Where that policy concerns a failure to train employees, "liability under [S]ection 1983 requires a showing that the failure amounted to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Id.* In addition, "'the deficiency in training must have actually caused' the constitutional violation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

Plaintiff argues that summary judgment should be denied as to the State Defendants because it permitted an officer with a disciplinary record to remain on active patrol.[7] Plf. Br. at 22-23. But Plaintiff cannot assert a *Monell* claim against the State, or Colonel Fuentes in his official capacity. "*Monell* liability only attaches to local governments, and does not attach to the State or its agencies." *Rouse v. N.J. Dep't of Health & Human Servs.*, No. 15-1511, 2015 WL 5996324, at *4 (D.N.J. Oct. 13, 2015) (citing *Monell*, 436 U.S. at 690). Moreover, the State, the New Jersey State Police, and the state officers in their official capacities are not "persons" subject to Section 1983 suit. *See Harris v. Soto*, No. 16-2551, 2016 WL 7391037, at *4 (D.N.J. Dec. 21, 2016) ("Neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983" (quoting *Hafer v. Melo*, 502 U.S. 21, 26 (1991))). Because the State, the New Jersey State Police, and Colonel Fuentes in his official capacity are not proper parties under Section

---

[7] One of the New Jersey State Police officers (whose identity is known to the parties) was previously disciplined on at least two occasions. In 2007, the officer was reprimanded for operating a troop car without authorization while off-duty and in civilian attire. Nekritin Decl. Ex. I. The officer was also disciplined in 2010. The details of the incident were not disclosed by the State Defendants, however, the incident resulted in a thirty-day suspension. *Id.* Ex. H.

1983, the Court need not consider the substance of Plaintiff's *Monell* claim against these Defendants. Summary judgment, therefore, is granted as to Count Two for the State Defendants.

Even if the Court were to consider the merits of Plaintiff's *Monell* claim as to the State Defendants, Plaintiff has not provided enough facts to create a material issue of fact. First, Plaintiff fails to provide any facts regarding a deficiency in the State's training procedures. In addition, although one officer was disciplined on two prior occasions (*see* note 8, *supra*), one of the occasions concerned using a police vehicle while off-duty. This transgression, along with the other undisclosed infraction (Nekritin Decl. Ex. H), is not enough to support a *Monell* claim. *See, e.g., Franks v. Cape May County*, No. 07-6005, 2010 WL 3614193, at *12 (D.N.J. Sept. 8, 2010) (granting defendant's summary judgment motion for *Monell* claim because evidence regarding a single complaint against officer involved was insufficient to establish a practice or policy of tolerating an atmosphere of police misconduct). Moreover, the Court cannot conclude that the State improperly supervised an employee when it does not even know which Individual Trooper Defendant (or even if it was an Individual Trooper Defendant in the first place) committed the misconduct alleged by Plaintiff.

### b. Claims Against the Riverdale Defendants

Plaintiff also asserts a *Monell* claim against the City of Riverdale and Soules in his official capacity. Compl. ¶¶ 38, 41. Plaintiff, however, provides no facts to support his claim against these Defendants. In addition, neither Plaintiff nor the Riverdale Defendants address the *Monell* claim in their summary judgment briefing. Because of the absence of factual support, summary judgment is also granted to the Riverdale Defendants as to Count Two. *See Bocchino v. City of Atlantic City*, 179 F. Supp.3d 387, 402 (D.N.J. 2016) (granting summary judgment to city on

*Monell* claim because plaintiff failed to set forth any evidence from which a reasonable juror could conclude that defendant established a policy or custom that cause plaintiff's injury).

### 2. State Failure to Supervise, Train, or Control Claims

In Count Four, Plaintiff brings a claim under the NJTCA for the failure to properly train, control or supervise officers. Compl. ¶¶ 49-55. Plaintiff also argues that summary judgment should be denied as to the State Defendants because they permitted a trooper to remain on patrol duty despite his disciplinary history. Plf. Br. at 23. A plaintiff may assert a claim against an entity pursuant to the NJTCA based on a theory of negligent hiring or supervision. *Hoag*, 397 N.J. Super. at 54. Accordingly, an employer may be liable for the torts of its employees "where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Di Cosala v. Kay*, 91 N.J. 159, 173 (1982). But as discussed, without knowing which Individual Defendant kicked Plaintiff, the Court cannot determine that either the State or the City of Riverdale knew or had reason to know about any unfitness or dangerous attributes of its employees. In addition, and as also discussed, Plaintiff has failed to present sufficient evidence as any particular officer's unfitness or dangerousness. Consequently, summary judgment is granted as to Defendants.

### D. Conspiracy (Counts Five and Six)

Plaintiff contends that the State and Riverdale Defendants conspired to violate his federal and state civil rights by using excessive force, filing false and misleading police reports, and giving misleading testimony before the Morris County Grand Jury. Compl. ¶¶ 56-65.

To prove a civil conspiracy under Section 1983, a plaintiff must show "that two or more co-conspirators reached an agreement for the purpose of depriving constitutional rights under color

of state law." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 646 (D.N.J. 2011). The "linchpin for [Section 1983] conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim." *Watson v. Sec'y Pa. Dep't of Corrs.*, 436 F. App'x 131, 137 (3d Cir. 2011) (internal quotations and punctuation omitted). A plaintiff must also establish an agreement and the existence of an underlying wrong to establish a claim for civil conspiracy under New Jersey law. *Banco Popular N.A. v. Gandi*, 184 N.J. 161, 177-78 (2005)

Plaintiff here fails to establish that an agreement existed between the any of the Defendants. Instead, Plaintiff asks the Court to infer from various actions of the Individual Defendants that an agreement existed. Plf. Br. at 18-20. For example, Plaintiff argues that the Court should infer that an agreement existed because Biro did not record the incident with his dashboard camera, even after he saw that Plaintiff smelled like alcohol and was acting in an uncooperative manner. *Id.* at 19. Plaintiff also maintains that the Court can infer an agreement existed because the Individual Officer Defendants did not document his injuries in their incident reports. *Id.* Although an agreement may be shown through circumstantial evidence, Plaintiff's evidence here is insufficient. There are simply no facts suggesting that Defendants spoke to each other concerning the alleged kick before the incident occurred. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 244 (3d Cir. 2016) ("A plaintiff must rely on more than his or her own suspicion and speculation to satisfy [the meeting of the minds] requirement."). Nor is there any other evidence to support a finding that the officers reached an illicit agreement prior to the alleged kick. Moreover, the Court cannot infer that a conspiracy existed to violate Plaintiff's constitutional rights through after-the-fact evidence. For example, although Plaintiff argues that the Individual Defendants' incident reports suggest that a conspiracy existed, Plaintiff does not contend that the officers from Riverdale and the State Police colluded before writing their respective reports or

before testifying before the grand jury. Therefore, summary judgment is granted for Defendants as to Counts Five and Six, Plaintiff's claims for civil conspiracy.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions (D.E. 59, 60) are **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: April 17, 2017

John Michael Vazquez, U.S.D.J.